OPINION
{¶ 1} Antonio Lakes appeals from his conviction of aggravated murder, aggravated robbery, and discharging a firearm near prohibited premises. Lakes' conviction followed a jury trial on all counts. The State's principal witness was the defendant's half-brother, Juan Carpenter, who testified on direct examination as follows.
 {¶ 2} In the late evening of February 22, 2005, Carpenter drove over to lower Dayton View to visit a friend on Five Oaks Avenue. In the vehicle with him was the defendant. When Carpenter turned onto Bellevue Avenue, Antonio Lakes asked Carpenter to stop his car and let him out to talk to a man later determined to be Jawan Jefferson. Carpenter then pulled his vehicle up the street, parked and waited for Lakes. After about five minutes, Carpenter testified he heard five or six shots ring out. He thought it sounded like two guns had been fired. Carpenter said as he began to pull his car away, Lakes jumped in the front seat of his car. Carpenter said Lakes told him he tried to rob the man and shot at him but he didn't know if he actually hit him. (T. 256). Carpenter said he drove a short distance and then told Lakes to get out of his car. Carpenter said he then went to his girlfriend, Diamond Poole's, house and told her and her sister, Daria, what happened.
 {¶ 3} The next morning Carpenter testified he received a call from Antonio Lakes who told him the robbery victim was dead. Later that day Carpenter said Lakes told him more details about the shooting. Carpenter said Lakes told him that when he tried to take money from Jefferson, the victim pulled out a gun and they started shooting at each other. (T. 266). Carpenter said he later told his older brother and his mother about the shooting of Jefferson. After learning that the police were looking for Juan's car, they contacted the police and Carpenter gave the police a statement about the shooting.
 {¶ 4} Carpenter said he did not call the police because he did not want to get the defendant in trouble. Carpenter testified he told his big brother, Eric, what happened. He said he told Eric that the defendant tried to rob the victim before he shot him. (T. 267).
 {¶ 5} On cross-examination, Carpenter denied telling Daria Poole that the defendant tried to rob the man or "vice versa." (T. 280). He also denied telling Daria that he heard gunshots and that the defendant was probably trying to rob the man. He admitted he knew the police were looking for his car before he went to the police and gave them a statement. He admitted that he initially did not tell the police that the defendant told him he tried to rob Jawan Jefferson. (T. 290).
 {¶ 6} Allen Lakes, the brother of Juan Carpenter and the defendant, testified he saw Juan and the defendant leave together on the night of the shooting. Lakes said he got a call from the defendant in the early morning hours and the defendant told him that he got into an argument with a man and they both started shooting at each other. He admitted, however, telling the police in a videotaped interview that the defendant told him he was trying to rob the victim. (T. 311 ).
 {¶ 7} Officer Robert Orndorff was dispatched to 824 Neal Avenue just after midnight on February 23 on a report of a shooting. When Orndorff arrived, a large crowd had gathered and Orndorff found Jefferson lying in the front yard having apparently been shot. Orndorff called for medical assistance. He discovered no weapon on Jefferson or nearby him. Jacob Blatzofthe Dayton Fire Department was dispatched to the scene also. He discovered that Jefferson had been shot in the chest and he removed Jefferson to the Good Samaritan Hospital where he died of his injury. He also saw no weapon on Jefferson or about him. Officer David Matthews responded to the scene also and he observed several small caliber spent shell casings, and one grouping of the casings appeared to be of two different sizes. (T. 163). Officer Anthony Sawmiller also responded and he determined some of the shell casings clustered together near Neal and Bellevue were nine-millimeter casings and some were.380 casings. Sawmiller said the casings appeared to be relatively new.
 {¶ 8} The defendant testified in his own behalf that Juan Carpenter gave him a ride over to Dayton View to see a female friend. He said he carried a gun for his own protection. He said he knew Juan was selling his car and wheel rims, and when he saw Jawan Jefferson standing at the corner of Bellevue and Neal, he asked Carpenter to stop the car. The defendant said he got out of the car and told Jefferson about Carpenter's car and offered to let him check it out. The defendant said when he turned around Jefferson pulled a gun on him and said, "You know what it is." (T. 474). The defendant said he stepped back and went into his pocket for his gun when Jefferson shot at him and he shot back at Jefferson. The defendant said he didn't know how many times he fired his gun at Jefferson because he was running away from him at the time. The defendant said he caught up with Carpenter, got into his car, and told him what happened. He said he told Carpenter that Jefferson tried to rob him. (T. 481). He said he didn't call the police because he was scared because he was not supposed to have a gun and he didn't know he had killed Jefferson. (T. 482). The defendant said he got rid of the gun the next day. He said sometime later he was arrested by the police and he told them just what he was now telling the jury. He said the gun he was carrying was a .380 with a full clip.
 {¶ 9} Daria Poole testified in the defense case that in her conversation with Juan Carpenter on the night of the shooting it was unclear from what Juan was saying to her
 {¶ 10} who robbed whom. (T. 460).
 {¶ 11} In rebuttal, Juan Carpenter testified he never had a conversation with the defendant about selling his car (T. 523, 524). He denied ever telling the defendant that if he helped him sell his car he would give him part of the money. (T. 524). He denied talking to the defendant about selling special car rims.
 {¶ 12} Detective Doyle Burke testified in rebuttal that the defendant initially denied any knowledge of the shooting but changed his story when told that they had interviewed Carpenter. Burke said the defendant told him Jefferson was the one who inquired about buying Carpenter's car. Burke said the defendant never mentioned car rims or earning a commission for selling Carpenter's car. Burke said the defendant told him he sold the .380 handgun the next day to someone in the street.
 {¶ 13} Lakes contends that his convictions were against the manifest weight of the evidence and were also based on insufficient evidence as a matter of law.
 {¶ 14} Lakes notes that he testified that Jawan Jefferson tried to rob him and he did not shoot at Jefferson until after Jefferson fired a gun at him first. Lakes notes he testified that he was scared when Jefferson pulled a gun on him and when he shot back at Jefferson he had his head turned and did not know if he shot Jefferson or not. He also notes that the police recovered two different-caliber casings consistent with both he and the victim firing guns. The Appellant also notes that he told both Juan Carpenter and Allen Lakes that it was Jefferson who pulled a gun and fired it first. The Appellant notes that Allen Lakes was not credible because when he was first interviewed by the police he did not implicate him in a robbery attempt upon Jefferson. He also notes he was working
 {¶ 15} two days a week and had no reason to rob anyone. Lastly, the Appellant argues the jury lost its way in convicting him and created a manifest injustice in convicting him.
 {¶ 16} In a related argument, Appellant argues the trial court erred in convicting him of aggravated murder and discharging a firearm near prohibited premises because he demonstrated by a preponderance of the evidence that he acted in self-defense. He notes that his testimony demonstrated that Jefferson was the aggressor and caused the situation to escalate to a gun fight.
 {¶ 17} The State argues Appellant's first two assignments should be overruled because Juan Carpenter testified that Antonio Lakes told him on two different occasions that he was trying to rob Jefferson when the shooting occurred. Secondly, they note Antonio's brother, Allen, told police early on that Antonio told him he was trying to rob Jefferson when the shooting happened and he testified that Antonio pulled his gun first. (T. 310). The State argues that the direct and circumstantial evidence demonstrated that the victim was purposely killed during an attempted robbery and the jury was not required to believe the defendant's version that he fired as he ran away in self-defense, particularly since he had a motive to lie.
 {¶ 18} The term "manifest weight of the evidence" concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. State v.Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. Weight is not a question of mathematics, but depends on its effect in inducing belief. Id. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact-finder's resolution of the conflicting testimony. Id. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. In determining the sufficiency of the evidence the relevant inquiry is, "after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991 ),61 Ohio St.3d 259, 273, 574 N.E.2d 492.
 {¶ 19} We believe that Juan Carpenter's testimony was sufficiently credible to sustain the verdicts rendered by the jury in this matter. Juan Carpenter testified that the defendant said he shot Jefferson while trying to rob him. He was subjected to extensive cross-examination by defense counsel who could not shake Carpenter's testimony. The jury was in the best position to assess Carpenter's testimony. The defendant contended he killed Jefferson in self-defense, yet he ran from the scene of the shooting and never reported the alleged robbery to the police. Flight may be considered by the jury on the issue of guilt. The defendant testified in his own behalf and the jury apparently did not find his testimony credible or persuasive. In order to prevail on the issue of self-defense the accused must show that he was not at fault in starting the affray, and that he had a bona-fide belief that he faced imminent danger of death or great bodily harm, and the only means of escape was the use of such force, and he violated no duty to retreat. See State v. Jackson (1986), 22 Ohio St.3d 281, 282. The fact that Jefferson may have had a weapon which was not recovered does not demonstrate that the defendant was not the aggressor.
 {¶ 20} The Appellant's first assignment of error is overruled.
 {¶ 21} In his second assignment, Lakes contends the trial court erred in admitting autopsy photos taken by the coroner to demonstrate the cause of death of Jawan Jefferson. Lakes contends these graphic photos were not necessary since no one disputed that Jefferson died of a gunshot wound to his abdomen. Lakes contends the probative value of these photos was substantially outweighed by the danger of unfair prejudice and they served only to prejudice the jury to gain their sympathy for the victim.
 {¶ 22} The admission or exclusion of photographs is governed by Evid.R. 403(A), which provides that the court must exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or of misleading the jury." When determining whether the relevance of evidence is outweighed by its prejudicial effects, the evidence is viewed in a light most favorable to the proponent, maximizing its probative value and minimizing any prejudicial effect to the party opposing admission. SeeState v. Frazier (1995), 73 Ohio St.3d 323, 333, 652 N.E.2d 1000; SeeState v. Durr (1991 ), 58 Ohio St.3d 86, 92, 568 N.E.2d 674. Further, the decision to either admit or exclude relevant photos is committed to the sound discretion of the trial court. State v. Abner, Montgomery App. No. 20661, 2006-Ohio-4510, at ? 102. Thus, an appellate court will not disturb a trial court's ruling on the admissibility of photos absent an abuse of discretion. Id.
 {¶ 23} We have viewed the photographs and we find no abuse of discretion present in the trial court's ruling. The Appellant's second assignment is overruled.
 {¶ 24} The judgment of the trial court is Affirmed.
FAIN and GRADY, JJ., concur.