[Cite as *State v. Du*, 2011-Ohio-6306.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## GREENE   COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2010-CA-27 |
| | : | |
| v. | : | Trial Court Case No. 06-CR-389 |
| | : | |
| CHI Q. DU | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 9th day of December, 2011.

. . . . . . . . .

STEPHEN K. HALLER, Atty. Reg. #0009172, by ELIZABETH A. ELLIS, Atty. Reg. #0074332, Greene County Prosecutor's Office, 61 Greene Street, Xenia, Ohio 45385
    Attorney for Plaintiff-Appellee

JAY A. ADAMS, Atty. Reg. #0072135, 424 Patterson Road, Dayton, Oho 45419
    Attorney for Defendant-Appellant

. . . . . . . . .

HALL, J.

{¶ 1}   Chi Q. Du appeals from his conviction and sentence on two counts of attempted aggravated murder.

{¶ 2}   Du advances four assignments of error on appeal. First, he claims one

of the two convictions is against the manifest weight of the evidence. Second, he challenges the legal sufficiency of the evidence to support that conviction. Third, he contends the trial court erred in admitting evidence of injuries involving a charge to which he had pleaded guilty. Fourth, he asserts that the trial court erred in imposing maximum, consecutive sentences without making required findings.

{¶ 3}   The charges against Du stemmed from a knife attack in a Wright State University parking lot on October 28, 1997. Late that evening, Du accompanied his former girlfriend, Thuy Mai, and her new boyfriend, Eric Borton, out of a campus building and into the parking lot. Borton walked in front as Du and Mai followed a short distance behind and talked. Borton then heard Mai scream. He looked back and saw Du holding a knife to her throat. Du proceeded to cut Mai's neck and stab her several times. Borton removed his jacket and charged Du, who side-stepped the advance, cut Borton's face, and stabbed him in the chest and abdomen. After Borton fell, Du returned to Mai, stabbing her several more times and cutting her neck while saying, "die, die." Du then fled the scene. He was arrested years later in Canada and returned to Ohio.

{¶ 4}   On March 15, 2010, Du pleaded guilty to attempted aggravated murder of Mai. He pleaded not guilty to attempted aggravated murder of Borton. Following a jury trial, Du was convicted of that offense. The trial court imposed consecutive ten-year prison sentences for the two convictions. This appeal followed.

{¶ 5}   As set forth above, Du's first two assignments of error challenge the legal sufficiency and manifest weight of the evidence to support his conviction for attempted aggravated murder of Borton. In these assignments of error, Du disputes

whether the State established that he "purposefully" and with "prior calculation and design" attempted to cause Borton's death.[1]

{¶ 6} When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law. *State v. Hawn* (2000), 138 Ohio App.3d 449, 471. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.

{¶ 7} Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52. A judgment should be reversed as being against the manifest weight of the evidence

---

[1]R.C. 2903.01, the aggravated murder statute, provides that "[n]o person shall purposely, and with prior calculation and design, cause the death of another[.]"  R.C. 2903.01(A).  Du was convicted of attempting to violate R.C. 2903.01(A).

"only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin* (1983), 20 Ohio App.3d 172, 175.

{¶ 8}   With the foregoing standards in mind, we turn to the evidence before us. Trial testimony established that Du and Mai dated for one and a half to two years while they were students at Wright State. Their relationship became "rocky," and they eventually quit dating. (Trial transcript at 195). After the break up, Du's behavior gradually changed. He began following Mai everywhere. (Id.). He would show up outside her classes even though he no longer was a student. Mai also saw Du appear other places, including the library, a restaurant, on the highway, and even at her house. (Id. at 197-203). Mai testified that it was as if Du had her schedule and showed up everywhere she went. (Id. at 203). Whenever Du appeared, he would attempt to talk to Mai about reviving their relationship. (Id.). At one point, Du admitted to Mai that he had been watching her sleep. (Id. at 197, 199). Mai found a shopping cart underneath her bedroom window and assumed that Du had used it to look in her room. (Id. at 199).

{¶ 9}   Du's behavior toward Mai "got worse" after she began dating Borton. (Id. at 205-206). He appeared with more frequency and continued trying to talk to her about reconciling. Mai discussed Du's "stalking behavior" with Borton, but she decided not to report it to police, fearing that it would get even worse. (Id. at 207). About a week before the incident at issue, Du appeared in a computer lab where Mai and Borton were working together. (Id. at 278). Du began pleading with Mai about getting back together. (Id. at 279). When Mai briefly left the room, Borton confronted Du, asking him to leave Mai alone. Du did not respond. (Id. at 280-281). Later that

day, Du approached Borton alone in a campus parking lot. After inquiring about Mai's whereabouts, Du told Borton, "You're a pretty nice guy. I would hate to see something happen to you but I won't give up on getting her back." (Id. at 281-282).

{¶ 10} Borton next encountered Du on the day of the knife attack. That afternoon, Borton saw Du talking to Mai in the school library. Du once again was pleading to get back together with Mai. Borton and Mai decided to leave, and they began walking to Borton's car. Du followed them and asked Borton whether he would be willing to die for Mai. Borton said that he would. (Id. at 287). Du responded by becoming "visibly upset" and cursing at Borton. (Id. at 288). Du continued following Borton and Mai. When they reached Borton's car, Mai rebuffed Du's attempt to kiss her. (Id.). Later that evening, Borton and Mai were watching a movie at Borton's apartment when they heard a knock on the door. Fearing that it might be Du, they did not answer the door. (Id. at 290).

{¶ 11} Between 7:00 p.m. and 9:00 p.m. that evening, another Wright State student, Bichnhu Nguyen, was studying in the school library. Du approached her and asked where Borton and Mai were. (Id. at 180). Du appeared "agitated" and "anxious to find them." (Id.). Shortly thereafter, Nguyen called Borton and told him about her encounter with Du. (Id. at 181). Later that night, sometime after 11:00 p.m., Borton and Mai returned to Wright State so Mai could retrieve a jacket. (Id. at 291). While they were at the school, Du arrived and found them. (Id. at 292). As he had previously, Du began pleading with Mai to return to him. During the encounter, Du mentioned having been to Borton's apartment looking for them. (Id.). Borton and Mai proceeded to leave the building and head toward Borton's car. (Id. at 300-302). Du

followed them to the parking lot. At some point, Borton got ahead of Du and Mai. He then heard Mai scream. (Id. at 303).

{¶ 12} Borton turned and saw Du holding a knife under her throat. (Id.). Du threatened to kill Mai if Borton moved. (Id. at 303). In response, Borton tried talking to Du to diffuse the situation. Du told Borton to shut up and stated, "If I can't have her th[e]n no one can." (Id. at 304). Du then cut Mai's neck and began stabbing her. Mai fell to the ground. (Id. at 304-307). Borton rushed to Mai's defense. He charged toward Du, who grabbed his shirt and stabbed him. The attack left Borton with multiple stab wounds to the right and left sides of his chest and abdomen. (Id. at 42). Borton fell to the ground and pretended to be dead. (Id. at 307-309). He then watched as Du returned to Mai and continued stabbing her. (Id. at 310). When Mai stopped moving, Du fled on foot. (Id.).

{¶ 13} On cross-examination, Borton provided additional testimony about the incident. He agreed with defense counsel that when he turned and saw Du holding a knife at Mai's throat Du advised him to leave or "get out of here." (Id. at 337). When questioned further by defense counsel, Borton then denied that Du warned him to "back off" or to "stay away." Instead, Borton recalled Du telling him not to move. (Id. at 338). For her part, Mai recalled Du telling Borton to "[g]o away." (Id. at 226). Mai's impression was that Du wanted Borton to leave them alone. (Id. at 261-262).

{¶ 14} In light of the foregoing evidence, Du disputes whether the State established that he "purposefully" and with "prior calculation and design" attempted to cause Borton's death. With regard to purposefulness, Du claims that the stab wounds he made to Borton do not indicate a specific intent to cause death because

they were not directed at the throat, heart, or spine. Du also stresses that he discontinued the stabbing when Borton collapsed. With regard to prior calculation and design, Du contends the evidence does not suggest a scheme to implement a calculated decision to kill Borton. Du notes that he did not act aggressively toward Borton until after Borton charged him. Du also points to the testimony that he told Borton to leave him alone with Mai. According to Du, events in the parking lot "unfolded quite quickly," leaving him with insufficient time to form a plan to kill Borton.

{¶ 15} Upon review, we find Du's arguments to be unpersuasive. A person acts purposely "when it is his specific intention to cause a certain result[.]" R.C. 2901.22(A). A jury may infer purpose to cause death when a defendant inflicts a wound with a deadly weapon in a manner that appears to be calculated to kill. *State v. Stallings*, 89 Ohio St.3d 208, 291, 2000-Ohio-164. The number and location of a victim's stab wounds, and the manner in which they were inflicted, may support an inference of a specific intent to kill. *State v. Hayden* (Sept. 16, 1997), Franklin App. No. 95APA05-559. A defendant need not stab his victim in the throat, heart, or spine to support a finding of purposefulness. In *State v. Luster* (July 25, 1985), Franklin App. No. 84AP-729, the Tenth District held that intent to kill could be inferred where the defendant stabbed the victim in the abdomen. We agree. The record reflects that Du drove a serrated knife into Borton's chest and abdomen multiple times. In light of this evidence, the jury reasonably could have inferred that Du purposefully attempted to cause Borton's death. Such a conclusion is supported by legally sufficient evidence and is not against the weight of the evidence.

{¶ 16} We reach the same conclusion with regard to prior calculation and

design. "There is no bright-line test to determine whether prior calculation and design are present. Rather, each case must be decided on a case-by-case basis." *State v. Braden*, 98 Ohio St.3d 354, 2003-Ohio-1325, ¶61. "However, where the evidence presented at trial 'reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified.'" *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, ¶154, quoting *State v. Cotton* (1978), 56 Ohio St.2d 8, paragraph three of the syllabus.

{¶ 17} Here the evidence supports a finding that Du acted with prior calculation and design when he attempted to kill Borton. The record reveals that Du and Borton were rivals for Mai's affection. Du's stalking behavior intensified after Mai began dating Borton, whose involvement with her angered Du. Approximately one week before the knife attack, Du made a veiled threat to Borton, telling him, "I would hate to see something happen to you but I won't give up on getting [Mai] back." On the afternoon of the attack, Du became "visibly upset" and cursed when Borton stated that he would die for Mai. That evening, Du sought a confrontation at Borton's apartment but was unsuccessful. Shortly thereafter, Du asked Wright State student Nguyen if she knew where Borton and Mai were. Du seemed "agitated" and "anxious to find them." This evidence supports a finding that Du was planning a confrontation with both of his victims.

{¶ 18} We note, too, that Du, armed with a knife, followed both Borton and Mai to a poorly lit parking lot that evening. He then viciously attacked Mai, despite

having been advised earlier in the day that Borton was willing to die for her. Therefore, the jury reasonably could have inferred that Du's attack on Mai was part of a tactic calculated to engage Borton as well. The record also contains testimony that Du told Borton not to move during the initial knife attack on Mai. This act of ordering Borton to remain present during the assault on Mai supports an inference that he planned to attack Borton next.

{¶ 19} In reaching the foregoing conclusion, we recognize the existence of seemingly conflicting testimony about whether Du ordered Borton not to move or, in fact, advised him to go away. The jury was instructed on the lesser charge of attempted murder, and it could have found Du guilty of that crime, in the absence of prior calculation and design, if it believed that he simply wanted Borton to go away and did not plan to attack him. Based on all of the evidence before us, however, the jury's finding of prior calculation and design, and the corresponding finding of guilty for the attempted aggravated murder of Borton, is supported by legally sufficient evidence and is not against the manifest weight of the evidence. The evidence presented at trial supports a finding of guilt beyond a reasonable doubt, and the evidence does not weigh heavily against Du's conviction. Accordingly, his first two assignments of error are overruled.

{¶ 20} In his third assignment of error, Du claims the trial court erred in allowing testimony regarding Mai's injuries and in allowing the State to display pictures of those injuries. Given that he already had pleaded guilty to attempted aggravated murder of Mai, Du contends any probative value of the testimony and pictures was substantially outweighed by the danger of unfair prejudice, confusion of

the issues, or misleading the jury. Therefore, he argues that the testimony and pictures should have been excluded under Evid.R. 403(A).

{¶ 21} When determining whether the probative value of evidence is outweighed by its prejudicial effects, the evidence is viewed in a light most favorable to the proponent, maximizing its probative value and minimizing any prejudicial effect to the party opposing admission. *State v. Lakes*, Montgomery App. No. 21490, 2007-Ohio-325, ¶20. The decision to admit or exclude relevant evidence is committed to the sound discretion of the trial court. Id. We will not disturb a trial court's ruling on the admissibility of evidence under Evid.R. 403(A) absent an abuse of discretion. Id.

{¶ 22} We find no abuse of discretion here. Evidence regarding the nature and extent of Mai's injuries was admissible for at least two reasons. First, it was relevant for the State to establish Du's murderous intent when he stabbed Borton. Indeed, Du's intent when he attacked Mai was indicative of his intent when he stabbed Borton because the two incidents occurred almost simultaneously. We hesitate to characterize the attack on Mai as other "crimes, wrongs or acts" evidence as included in Evid. R. 404(B) because the attack on Mai is a cohesive part of the same event. However, 404(B) is at least instructive to indicate that other acts evidence of one's "motive,* * * intent, * * * [and] plan" may be admitted to prove those components when relevant. The vicious nature of the attack on Mai, as shown through the disputed evidence, was relevant to prove motive and intent. Second, as noted above, evidence regarding the nature and extent of Mai's injuries was relevant to the issue of prior calculation and design. The fact that Du violently attacked Mai in

Borton's presence, despite knowing that Borton was willing to die for her, supports an inference that the jury could draw that the attack on Mai was calculated to result in Borton's death as well. The trial court did not act unreasonably or arbitrarily in finding that the probative value of the disputed evidence was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. The third assignment of error is overruled.

{¶ 23} In his fourth assignment of error, Du asserts that the trial court erred in imposing maximum, consecutive sentences without making findings under R.C. 2929.14(E)(4). We disagree. As an initial matter, we note that the provision does not address maximum sentences. It addresses only consecutive sentences. Although the language of R.C. 2929.14(E)(4) does require certain findings before a trial court may impose consecutive sentences, the statute had no applicability here. In *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, the Ohio Supreme Court declared the requirements imposed by R.C. 2929.14(E)(4) unconstitutional and held that "judicial fact-finding is not required before imposition of consecutive prison terms." Id. at ¶99. Thereafter, in *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, the Ohio Supreme Court "reiterated that R.C. 2929.14(E)(4) remained unconstitutional and imposed no fact-finding obligation on Ohio's trial courts." *State v. Ford*, Clark App. No. 11-CA-26, 2011-Ohio-5203, ¶4. The General Assembly recently amended R.C. 2929.14(E)(4) and enacted new language requiring fact-finding for consecutive sentences. See Am.Sub.H.B. No. 86. This legislation, which had an effective date of September 30, 2011, was not applicable to Du, who received his sentence in March 2010. Accordingly, his fourth assignment of error is overruled.

The judgment of the Greene County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

GRADY, P.J., and DONOVAN, JJ., concur.

Copies mailed to:

Stephen K. Haller
Elizabeth A. Ellis
Jay A. Adams
Hon. Michael A. Buckwalter