[Cite as *In re S.A.*, 2014-Ohio-3063.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| IN RE: | : | Appellate Case Nos. 25994 |
| | : | 26001 |
| S.A., T.M. and S.A. | : | |
| | : | Trial Court Case Nos. JC 2009-10601 |
| | : | JC 2011-728 |
| | : | JC 2012-913 |
| | : | |
| | : | (Juvenile Appeal from Montgomery |
| | : | County Juvenile Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 11th day of July, 2014.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by TIFFANY C. ALLEN, Atty. Reg. #0089369, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

ROBERT L. SCOTT, Atty. Reg. #0086785, 8801 North Main Street, Suite 200, Dayton, Ohio 45415
        Attorney for Appellant, E.M.

JAMES C. STATON, Atty. Reg. #0068686, 5613 Brandt Pike, Huber Heights, Ohio 45424
        Attorney for Appellant, T.A.

. . . . . . . . . . . .

FAIN, J.

[Cite as *In re S.A.*, 2014-Ohio-3063.]

{¶ 1} E.M. (Mother) and T.A. (Father) appeal from an order of the Montgomery County Court of Common Pleas, Juvenile Division, awarding permanent custody of their children, S.A., T.M. and S.A. to Montgomery County Children's Services (MCCS).[1] Mother contends that the Juvenile Court erred in finding that the children cannot be placed with her within a reasonable time, that she was denied the effective assistance of counsel, and that the court erred in the admission of evidence of her sexual relationship with her own father. Father contends that the order is not supported by the evidence.

{¶ 2} We conclude that the court did not abuse its discretion in determining that the probative value of the admission of the evidence at issue outweighed its prejudicial effect. We further conclude that there is sufficient evidence upon which the court could rely in finding that the children could not be placed with their parents within a reasonable time and in finding that an award of permanent custody to MCCS is in the best interest of the children. Accordingly, the order of permanent custody is Affirmed.

## I. The Situation of the Family

{¶ 3} Mother and Father are the natural parents of S.A.-1, born November 21, 2009, T.M, born January 27, 2011, and S.A.-2, born February 6, 2012. S.A.-1 has vision issues including lazy eye and farsightedness for which she receives treatment. T.M. is developmentally delayed and receives physical, occupational and speech therapy for his condition. S.A.-2 has significant medical problems including macroencephaly and heart blockage.

---

[1] For ease of reference, wWe will refer to the two children with identical initials as S.A.-1 and S.A.- 2.

{¶ 4}    MCCS established a case plan for the parents as early as April 2010.   The plan was discussed with the parents on numerous occasions, and the parents admit that they were aware of the plan's requirements.   The case plan required the parents to maintain stable housing and income; complete a parenting and psychological assessment and comply with any treatment recommendations; complete a visitation assessment and parenting classes; maintain regular visitation and attend the children's medical appointments; and engage in counseling.

{¶ 5}    Psychological examination and testing by Richard Bromberg, a clinical psychologist, revealed that both parents have significant cognitive impairment.   Father reads at a fourth-grade level with a low average intellect, while Mother reads at a second-grade level and has a below average intellectual functioning, with difficulty in memory, concentrating, thinking, and decision-making.   Both parents also have mental health issues. Father has bi-polar personality disorder, with violent, aggressive, antisocial, physical abuse, and substance abuse traits.   His testing indicated that he has a dysfunctional method of parenting and a high likelihood of committing child abuse.   Mother suffers from anxiety, and exhibits "almost delusional" paranoid ideation.   Tr. p. 75.   She also exhibits traits indicating a substantial likelihood of committing child abuse.   Both parents were abused as children.   Bromberg opined that Father's view of parenting as a great stressor indicated that he would have difficulty in parenting and that he would need to engage in ongoing parenting education.   Bromberg opined that Mother was not capable of independently parenting the children.   "Aggressive" treatment, including medication, was recommended for Father for a minimum of one year.   Id. at 64.   Bromberg recommended that Mother receive intensive

weekly group and individual counseling for at least twelve months, but noted that her need for treatment would be lifelong. He also recommended that she be evaluated by a psychiatrist for the administration of medication.

{¶ 6} Father did not engage in any treatment after Bromberg's examination. Althoiugh Mother had been engaged in counseling for several years, her psychological and cognitive impairment did not improve, and she did not comply with recommendations for obtaining medications.

{¶ 7} Psychologist, Gordon Harris, also evaluated both parents, and testified on their behalf at the disposition hearing. Harris acknowledged that Mother was not capable of independently parenting the children. He opined that he did not observe any "significant psychopathologies" in Father, but did note that Father demonstrates "unrealistic perceptions" that sometimes cause him to reach "erroneous conclusions." Id. at 470. Harris testified that during the family session the children and Father appeared bonded and that Father's "interactions with the children were fairly appropriate." Id. at 469. However, he stated that he felt that Father was "putting on a display" to "look like a good parent." Id. Harris testified that Father does have the capacity to make reasonable decisions. But Harris admitted that in order to parent the children, Father would need help from a support system, as well as ongoing counseling. Harris stated that Father would require "substantial assistance to meet the needs of [the two children with serious medical needs]." Id. at 486.

{¶ 8} The parents did not have housing at the time of S.A.-1's birth. They subsequently obtained housing, but caseworkers found animal feces throughout the kitchen, and an infestation of bed bugs. The parents moved from that home into a residence on

Wyoming Avenue, where they were living at the time of the hearings. According to caseworkers, the home was cleaner. However, there was evidence that the Wyoming Avenue home was infested with bedbugs. The parents receive about $1,000 per month in Social Security Disability, and Father brings in an unknown amount of income from various jobs. They still have issues with meeting their rent and utility payments. The home had no heat at the time S.A.-2 was born in February.

{¶ 9} There is also evidence that Father permitted numerous individuals to reside in the home. Mother described one individual as homeless. Father's brother, a sexually oriented offender, was also observed in the home during two home visits by the caseworker and Guardian Ad Litem, despite the fact that the parents knew he was not to be in the home. Father admitted that his brother stayed in the home for fourteen days following an injury in 2011. The children were present during that time. The agency, which had just begun trial visitations in the home, stopped the home visitations and returned visitations to the agency premises. Thereafter, Father obtained a temporary restraining order against his brother, but the order expired prior to the final hearing. The agency workers also addressed the need to exclude other individuals from living in the home. This issue was not resolved at the time of the hearing.

## II.  The Course of Proceedings

{¶ 10} MCCS became involved with the family upon S.A.-1's birth, because the parents lacked stable housing and had mental health issues. T.M. and S.A.-2 were each taken into custody by MCCS from birth. All three children were eventually adjudicated

dependent. MCCS moved for permanent custody in 2011 with regard to S.A.-1 and T.M., and in 2012 with regard to S.A.-2. A dispositional hearing was held on several dates in June, August and September of 2012.

{¶ 11}    Following the hearing, the magistrate entered a decision, dated November 2, 2012, awarding permanent custody of all three children to MCCS. Both Mother and Father filed objections, separately, which were overruled by the Juvenile Court on October 18, 2013. Mother and Father have filed separate appeals which were consolidated by order of this court dated January 17, 2014.

### III.   There Is Sufficient Evidence in the Record to Support the Award
### of Permanent Custody to Montgomery County Children's Services

{¶ 12}   In Mother's First Assignment of Error and Father's sole assignment of error they each contend that the evidence in the record does not support the award of permanent custody to MCCS:

> THE TRIAL COURT'S FINDING [MOTHER'S] CHILDREN CANNOT BE PLACED WITH HER WITHIN A REASONABLE TIME IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.

> THE TRIAL COURT ERRED TO [FATHER'S] PREJUDICE WHEN IT GRANTED PERMANENT CUSTODY.

{¶ 13}   Mother contends that the finding that the children cannot be placed with her within a reasonable time is not supported by the record. In support, she argues that she had "established a safe, appropriate household," had engaged in counseling, and had attended all

visitation sessions. Father contends that the evidence supports a finding that reunification within a reasonable time is possible, and that reunification is in the best interest of the children.

{¶ 14} R.C. 2151.414 establishes a two-part test for courts to apply when determining a motion for permanent custody to a public services agency. The statute requires the court to find, by clear and convincing evidence, that: (1) granting permanent custody of the child to the agency is in the best interest of the child; and (2) either the child (a) cannot be placed with either parent within a reasonable period of time or should not be placed with either parent if any one of the factors in R.C. 2151.414(E) are present; or (d) has been in the temporary custody of one or more public or private children services agencies for twelve or more months of a consecutive twenty-two month period. R.C. 2151.414(B)(1); *In re S.J.*, 2d Dist. Montgomery No. 25550, 2013-Ohio-2935, ¶ 14, citing *In re K.M.*, 8th Dist. Cuyahoga No. 98545, 2012-Ohio-6010, ¶ 8.

{¶ 15} The statutory best-interest factors include, but are not limited to: (1) the interaction and interrelationship of the child with the child's parents, relatives, foster parents and any other person who may significantly affect the child; (2) the wishes of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency. R.C. 2151.414(D)(1).

{¶ 16} When determining whether a child can be placed with his natural parents within a reasonable time, the trial court must look to R.C. 2151.414(E), which provides a list of factors to consider. If the trial court finds from all relevant evidence that one or more of these factors exist, it then must consider whether permanent commitment is in the best

interest of the child. *In re William S.*, 75 Ohio St.3d 95, 661 N.E.2d 738 (1996). These factors include:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

* * *

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child

when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

* * *

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

R.C. 2151.414(E).

**{¶ 17}** A trial court's decision on termination "will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." (Citations omitted.) *In re A.U.*, 2d Dist. Montgomery No. 22264, 2008-Ohio-186, ¶ 15. "[I]ssues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact." *In re A.J.S.*, 2d Dist. Miami No. 2007 CA 2, 2007-Ohio-3433, ¶ 22. The "rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons*

*Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984); *In re J .Y.*, 2d Dist. Miami No. 07-CA-35, 2008-Ohio-3485, ¶ 33.

{¶ 18} The magistrate found that the parents had not completed their case plan objectives, and had thereby failed to remedy the issues that caused the removal of the children. Specifically, the magistrate found that Father had failed to comply with treatment recommendations, and that although Mother had engaged in counseling, she had not progressed. Father argues that the testimony of Dr. Harris indicates that he is capable of parenting, and that it should have been afforded greater weight. The magistrate found the testimony of Dr. Bromberg, the clinical psychologist who tested and examined both parents regarding their cognitive limitations and mental health issues "very credible," and specifically found that Dr. Bromberg's assessment was "more thorough and complete" than that of Dr. Harris.

{¶ 19} The magistrate further found that Father's propensity to permit numerous individuals to stay in the residence, including his brother, and Mother's failure to stop this behavior, demonstrates that the parents' housing situation is not stable. While Father denies permitting others in the home, he did admit that his brother and another man stayed at the home at different times. Father admitted that, despite being aware of the need to keep his brother away from the children, he permitted his brother to live with him for fourteen days, while he had home visitation with the children. Father did obtain a temporary protective order restraining the brother from coming to the house, but that was after visitations were returned to agency premises. Furthermore, the restraining order had expired by the time of the hearing, and Father did not indicate an intent to seek another order. There is also evidence in the record that Father indicated to agency workers that he disagreed with the agency's view that there was a need to keep his brother away from his children.

{¶ 20} The magistrate noted that neither parent had complied with the requirement that they attend medical appointments with the children. As the magistrate stated, the parents "need to fully comprehend the serousness of the medical issues and the appropriate treatments for T.M. and S.A.-2." The record supports a finding that while the parents were aware of the appointments, they failed to attend the majority of appointments.

{¶ 21} There is also evidence in the record upon which the trial court could rely in finding that Father and Mother do not have any support system or persons who would be capable of helping them parent the children. Father insists that his mother could help them with parenting. But there was evidence that Father was abused as a child, rendering his mother unsuitable. Father noted that his ex-girlfriend could help. When it was noted that the girlfriend had a disability, Father then stated that the girlfriend's daughter and sister could help her. Finally, Father argued that his brother's daughter could aid them in parenting. But the daughter, who is eighteen, resides with the sexual offender brother, and she has a significant physical disability. We conclude that there is no error in the trial court's conclusion that the parents do not have a support system to help them parent. Significantly, both parents refused to take additional parenting classes, despite Dr. Bromberg's recommendations, and the testimony of the agency workers that the parents did not exhibit any progress from the prior parenting class.

{¶ 22} We conclude that there is evidence in this record to support the trial court's finding that the parents failed to complete their case plan and remedy the issues related to removal. There is also evidence in the record that the agency did make available to the parents services aimed at helping them meet the case plan goals. MCCS provided referrals to counseling, parenting classes and psychological assessments. The agency also provided

transportation, and monitored three-hour visits two days per week. The agency attempted to transition to in-home visits, but the discovery that Father's brother was permitted to live in the house caused the home visitation to be revoked.

{¶ 23} There is also evidence in the record to support the trial court's finding that the parents have significant chronic psychological impairments, which they have not addressed. There is unrebutted evidence that Mother is not capable of independently caring for the children. There is also evidence that Father is currently unable to meet the daily needs of the children, and would need to undergo at least one year of aggressive treatment and develop a strong support system before he would be able to parent.

{¶ 24} There is also evidence upon which the trial court could rely in finding that Father has displayed a lack of commitment toward the children by failing to regularly visit, by sleeping during numerous visits, and by failing to attend the children's medical appointments.

{¶ 25} We conclude that the record includes ample evidence to support the trial court's finding that the children cannot be returned to either parent within a reasonable time, due to the parents' lack of compliance with the case plan, but also due to their mental impairments.

{¶ 26} The evidence in the record also supports a finding that awarding permanent custody to MCCS is in the best interest of the children. It is clear from this record that the parents love their children, and are bonded to them. But it is also clear from the record the parents lack basic knowledge of the age-appropriate development for the children, and that they were unable to utilize the education they received in their first parenting class. The children have not lived with the parents, having been placed in foster

care from birth.

{¶ 27} S.A.-1 and T.M. have been in the custody of their foster parents for their entire lives; they are very bonded and integrated with that family. The foster mother takes care of the children's special and medical needs. The children have done well in this home. S.A.-2 lives with another family and is bonded with that family. Both families have a good relationship and the three children are able to bond with one another. The foster parents of S.A.-1 and T.M. intend to adopt them, and are considering adoption of S.A.-2.

{¶ 28} The court found that the children are too young to express their wishes regarding custody. The Guardian Ad Litem testified that she recommends awarding permanent custody to MCCS.

{¶ 29} As noted above, the children have never lived with their parents. S.A.-1 has been in the custody of MCCS for more than twelve months. There is evidence that the parents cannot independently meet the needs of the children, and that they have no relatives or friends who can aid them in parenting. There is also evidence that the parents have failed to remedy the issues surrounding their housing and their mental health. The trial court did not err in concluding that the need for legally secure placement cannot be met by the parents.

{¶ 30} Based upon the record before us, we conclude that the order awarding permanent custody of the children to MCCS is supported by clear and convincing evidence. Accordingly, Mother's First Assignment of Error and Father's sole assignment of error are overruled.

**IV. Trial Counsel Was Not Ineffective for Having Failed to Object**

**to Evidence of Mother's Sexual Relationship with her Father;**

**the Probative Value of this Evidence Outweighs its Prejudicial Effect**

{¶ 31} Mother asserts the following as her Second Assignment of Error:

DEFENDANT WAS DEPRIVED OF HER RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL FAILED TO OBJECT TO TESTIMONY ABOUT HER CONSENSUAL SEXUAL RELATIONSHIP WITH HER FATHER.

{¶ 32} Mother contends that references made to her sexual relationship with her father were prejudicial. Specifically, Dr. Bromberg testified that Mother informed him that her own father was the biological father of one of her older children.[2] Also, Mother informed an agency employee that she did not view as inappropriate her sexual relationship with her father. Mother contends trial counsel's failure to object to the admission of this evidence constitutes ineffective assistance of counsel.

{¶ 33} In termination proceedings, parents are entitled to counsel. R.C. 2151.352; Juv.R. 4. This right includes the right to the effective assistance of trial counsel. *In re Wingo*, 143 Ohio App.3d 652, 666, 758 N.E.2d 780 (4th Dist. 2001). The test for ineffective assistance of counsel used in criminal cases is equally applicable to actions seeking the permanent, involuntary termination of parental custody. *In re T.P.*, 2d Dist. Montgomery No. 20604, 2004-Ohio-5835, ¶ 45.

{¶ 34} To obtain reversal on a claim of ineffective assistance of counsel, an appellant must demonstrate both deficient performance and resulting prejudice. *Strickland*

---

[2] The record shows that Mother had previously had her rights terminated regarding two older children.

*v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show deficiency, the appellant must show that counsel's representation fell below an objective standard of reasonableness. *Id*. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of effective assistance. *Id*. The adequacy of counsel's performance must be viewed in light of all of the circumstances surrounding the trial court proceedings. *Id*. Hindsight may not be allowed to distort the assessment of what was reasonable in light of counsel's perspective at the time. *State v. Cook*, 65 Ohio St.3d 516, 524, 605 N.E.2d 70 (1992). With this standard in mind, we turn first to the issue of whether the evidence should have been admitted; i.e., would an objection likely have been sustained.

**{¶ 35}** Evid.R. 403(A) provides: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or of misleading the jury." This rule "manifests a definite bias in favor of the admission of relevant evidence, as the dangers associated with the potentially inflammatory nature of the evidence must substantially outweigh its probative value before the court should reject its admission." *State v. White*, 4th Dist. Scioto No. 03CA 2926, 2004-Ohio-6005, ¶ 50. Thus, "[w]hen determining whether the relevance of evidence is outweighed by its prejudicial effects, the evidence is viewed in a light most favorable to the proponent, maximizing its probative value and minimizing any prejudicial effect to the party opposing admission." *State v. Lakes*, 2d Dist. Montgomery No. 21490, 2007-Ohio-325, ¶ 22. In addition, trial courts have broad discretion in admitting evidence, and their decisions will not be overturned absent an abuse of discretion and material prejudice to the defendant. *State v. Taylor,* 2d Dist. Montgomery No. 20944, 2006-Ohio-843, ¶ 58, citing *State v. Maurer*, 15

Ohio St.3d 239, 264-265, 473 N.E.2d 768 (1984).

{¶ 36} The evidence in this case indicates that Mother has extreme mental limitations, and cannot make appropriate decisions with regard to her children. There is also evidence that she did nothing to prevent the children from coming into contact with Father's brother, whom she knows to be a sexually oriented offender, and that she does not prevent other individuals from living in her home. The trial court could reasonably find that the evidence of Mother's sexual relationship with her father is probative evidence of her lack of judgment. While this evidence may also have some undue prejudicial effect, we do not find the undue prejudice outweighs its probative value. Significantly, the finder of fact in this case was a judge, not a jury, and we presume that the judge could distinguish the legitimate probative effect of this evidence from its scandalous nature. We conclude that an objection to this evidence would likely have been overruled. Therefore, counsel was not ineffective for having failed to object to its admission.

{¶ 37} Mother's Second Assignment of Error is overruled.

## V.  Conclusion

{¶ 38} Both of Mother's assignments of error, and Father's sole assignment of error having been overruled, the order of the Juvenile Court awarding permanent custody of the children to Montgomery County Children's Services is Affirmed.

. . . . . . . . . . . . .

DONOVAN and WELBAUM, JJ., concur.

Copies mailed to:

Mathias H. Heck
Tiffany C. Allen
Robert L. Scott
James C. Staton
Hon. Anthony Capizzi