The STATE of Ohio, Appellee,

v.

VANNI, Appellant.

[Cite as *State v. Vanni*, 182 Ohio App.3d 505, 2009-Ohio-2295.]

Court of Appeals of Ohio,
Ninth District, Medina County.

No. 08CA0023–M.

Decided May 18, 2009.

Dean Holman, Medina County Prosecuting Attorney, and Russell Hopkins, Assistant Prosecuting Attorney, for appellee.

William T. Doyle and Steve Canfil, for appellant.

---

CARR, Presiding Judge.

{¶ 1} Appellant, John Vanni, appeals the judgment of the Medina County Court of Common Pleas that denied his motion to suppress and found him guilty of possession of drugs. This court reverses.

I

{¶ 2} On March 29, 2007, Vanni was indicted on one count of possession of drugs in violation of R.C. 2925.11(A), (C)(1)(c), a felony of the second degree. The case was assigned to the Honorable James Kimbler, who recused himself on April 2, 2007. On April 4, 2007, a judgment entry was issued, transferring the case to the docket of the Honorable Christopher Collier.

{¶ 3} On May 7, 2007, the state filed its answer to Vanni's demand for discovery, appending (1) a copy of Agent Jennifer Smith's (Medina County Drug Task Force) affidavit for a search warrant regarding Vanni's property, "[s]worn to and subscribed before" Judge Collier and (2) a copy of the search warrant regarding Vanni's property. The search warrant stated: "I find, from affidavit(s) sworn before me, a judge of a Court of record, that grounds exist for issuing this warrant, to wit; probable cause to search." Judge Collier signed the search warrant on February 12, 2007.

{¶ 4} On May 21, 2007, Vanni filed a motion to suppress. On May 24, 2007, a certificate of assignment signed by Chief Justice Thomas Moyer of the Ohio Supreme Court was filed, assigning the Honorable Judith Cross, effective April 27, 2007, "to preside in the Medina County Court of Common Pleas, General Division, to hear case 07 CR 0195, State of Ohio v. John Vanni and to conclude any proceedings in which she participated."

{¶ 5} On June 13, 2007, the state filed a response in opposition to Vanni's motion to suppress. On July 18, 2007, the state moved to continue the hearing on Vanni's motion to suppress because the assistant prosecuting attorney would be on vacation on the date scheduled for hearing. Judge Cross granted the motion to continue and rescheduled the hearing on Vanni's motion to suppress for August 8, 2007. On August 8, 2007, Judge Collier issued a journal entry, noting that the parties agreed that there was no factual dispute and that no testimony was necessary in regard to the suppression motion. Judge Collier further noted

in the journal entry that he had heard arguments of law from both attorneys, and he denied Vanni's motion to suppress.

{¶ 6} The case proceeded to trial before Judge Cross, who found Vanni guilty of possession of drugs. Vanni subsequently filed a motion requesting that the trial court reconsider its denial of a motion for acquittal or for a new trial, as well as a sentencing brief. Judge Cross denied the motion for reconsideration and new trial. On February 28, 2008, Judge Cross sentenced Vanni to two years in prison.

{¶ 7} Vanni timely appealed, raising five assignments of error for review.

## II

### ASSIGNMENT OF ERROR I

"The trial court erred in denying Vanni's motion to suppress evidence."

{¶ 8} Vanni argues that the trial court erred by denying his motion to suppress. This court agrees.

{¶ 9} Vanni sets forth five bases for trial court error in denying his motion to suppress: (1) the police did not comply with the requirement of R.C. 3719.141(A) to obtain approval from the county prosecutor before engaging in a "controlled delivery," (2) the judge who issued the search warrant upon a finding of probable cause determined that the search was valid and, therefore, denied the motion to suppress evidence as a result of that search, (3) the judge who denied the motion to suppress was not the judge with authority to make any further rulings in the case, (4) the anticipatory search warrant was invalid because the "triggering" event had not occurred at the time the search warrant was executed, and (5) the police did not confine their search to the areas specified in the search warrant.

{¶ 10} In this case, Chief Justice Moyer appointed Judge Cross, effective April 27, 2007, to preside over Vanni's case "and to conclude any proceedings in which she participated." "Pursuant to the Ohio Constitution, the authority to assign judges to duty in other courts and counties rests with the Chief Justice of the Supreme Court." *In re Disqualification of Hunter* (1996), 77 Ohio St.3d 1242, 674 N.E.2d 354. It is axiomatic that when the Chief Justice has appointed a judge to preside over a matter, no other judge has the authority to issue substantive rulings in regard to the case. The Tenth District Court of Appeals recognized as much in *Ferguson v. Ferguson* (June 29, 2000), 10th Dist. No. 99AP–1438, 2000 WL 861664. In *Ferguson,* the Chief Justice appointed Judge Dodd to preside over the case. The Chief Justice later withdrew Judge Dodd's appointment and appointed Judge Yarbrough to preside over the case. Notwithstanding the appointment of another judge, Judge Dodd issued an order of

reference to the magistrate to hear a certain issue in the case. The *Ferguson* court held that the order of reference was void ab initio because Judge Dodd's authority over the case had been terminated. In this case, the certificate of assignment by which the Chief Justice appointed Judge Cross to preside over the case terminated any further authority Judge Collier had to issue any further substantive orders.

{¶ 11} Judge Collier issued an order on August 8, 2007, more than three months after he lost the authority to preside over Vanni's case. In addition, Judge Collier denied Vanni's motion to suppress that was premised on an alleged improper search and seizure arising out of a search warrant authorized by Judge Collier.

{¶ 12} Because Chief Justice Moyer had appointed Judge Cross to preside over this case below, Judge Collier had no authority to issue a ruling on Vanni's motion to suppress. Accordingly, Vanni's first assignment of error is sustained.

### ASSIGNMENT OF ERROR II

"The evidence presented by the state was insufficient to support a conviction; therefore, the trial court erred in denying Vanni's motions for acquittal."

### ASSIGNMENT OF ERROR V

"The evidence presented by the state was insufficient to support a conviction for possession of five times bulk amount."

{¶ 13} Vanni argues that the state presented insufficient evidence to support his conviction. This court disagrees.

{¶ 14} As an initial matter, we conclude that our resolution of the first assignment of error does not render moot Vanni's challenges to the sufficiency of the evidence adduced at trial. The Ohio Supreme Court recently "distinguish[ed] between appellate court reversals based solely upon insufficiency of the evidence and those based on ordinary 'trial errors.'" *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284, at ¶ 18. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution protect a criminal defendant from multiple prosecutions for a single offense. Accordingly, notwithstanding some procedural defect by the trial court warranting reversal, the state remains entitled to "one, and only one, full and fair opportunity" to prosecute the defendant in regard to a single offense. *Richardson v. United States* (1984), 468 U.S. 317, 331, 104 S.Ct. 3081, 82 L.Ed.2d 242. When a case is reversed on the basis of trial error, such as the improper receipt or rejection of evidence, the Double Jeopardy Clause does not prohibit retrial " 'where the evidence offered by the State and admitted by the trial court-

whether erroneously or not-would have been sufficient to sustain a guilty verdict.'" *Brewer* at ¶ 17, quoting *Lockhart v. Nelson* (1988), 488 U.S. 33, 35, 109 S.Ct. 285, 102 L.Ed.2d 265.

{¶ 15} The *Brewer* court recognized the corollary, however, that the state is not entitled to retry a criminal defendant after reversal for trial court error if the state failed in the first instance to present sufficient evidence. Id. at ¶ 8. Accordingly, a defendant's assigned error that the conviction is based on insufficient evidence is not moot under these circumstances. The Ohio Supreme Court emphasized, however, that the interest in the administration of justice dictates that the appellate court review the issue of sufficiency in consideration of all evidence presented by the state in its case in chief, whether such evidence was properly admitted or not. Id. at ¶ 19. Regarding any prior decisions of this court that reached a contrary conclusion, *Brewer* clarifies that a sufficiency argument cannot be rendered moot. See, e.g., *State v. Myers*, 9th Dist. No. 23508, 2007-Ohio-4134, 2007 WL 2317421.

{¶ 16} Crim.R. 29 provides:

(A) The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Galloway* (Jan. 31, 2001), 9th Dist. No. CA 19752, 2001 WL 81257.

{¶ 17} The test for sufficiency requires a determination of whether the state has met its burden of production at trial. *State v. Walker* (Dec. 12, 2001), 9th Dist. No. 20559, 2001 WL 1581570; see also *State v. Thompkins* (1997), 78 Ohio St.3d 380, 390, 678 N.E.2d 541.

{¶ 18} Vanni was convicted of possession of drugs in violation of R.C. 2925.11(A), (C)(1)(c), which states that "[n]o person shall knowingly obtain, possess, or use a controlled substance." This offense constitutes a felony of the second degree if the drug involved is a Schedule II drug in the amount equal to

or greater than five times the bulk amount but less than 50 times the bulk amount. R.C. 2925.11(C)(1)(c).

{¶ 19} R.C. 2901.22(B) states:

A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

{¶ 20} "Possess" means "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). A "controlled substance" is "a drug, compound, mixture, preparation, or substance included in schedule I, II, III, IV, or V." Oxycodone is classified as a Schedule II opium derivative. R.C. 3719.41, Schedule II(A)(1)(n). "Bulk amount" for a Schedule II opium derivative is "an amount equal to or exceeding twenty grams or five times the maximum daily dose in the usual dose range specified in a standard pharmaceutical reference manual." R.C. 2925.01(D)(1)(d).

{¶ 21} Vanni argues that the state presented insufficient evidence that he knowingly possessed the drugs and that the amount of drugs equaled or exceeded five times the bulk amount, which raised the offense level to a felony of the second degree.

{¶ 22} At trial, Agent Jennifer Smith, an undercover narcotics agent with the Medina County Drug Task Force, testified that on January 10, 2007, she received a call from Detective Whatcott of the Central Utah Narcotics Task Force. She testified that Detective Whatcott told her that he was investigating shipments of oxycodone by Tammy Rhodes in Utah to Vanni in Ohio. She testified that the detective told her that he had been working with the United Parcel Service ("UPS") to identify packages from Rhodes to Vanni. She testified that the detective told her that UPS had recently identified such a package, that he confiscated the package pursuant to a search warrant, and that it contained ninety 80 mg pills of OxyContin. Smith testified that the detective told her that Rhodes had agreed to cooperate with the Utah task force, so the detective kept 45 pills as evidence and sent the remaining 45 pills to Smith.

{¶ 23} Smith testified that her task force devised a controlled delivery plan, whereby the task force would obtain an anticipatory search warrant, and a postal inspector posing as a mail carrier would deliver the package of 45 pills from Rhodes to Vanni by ordinary mail. She testified that the postal inspector delivered the package to Vanni's business on February 13, 2007. She testified that Patricia Boesel accepted delivery of the mail. Smith testified that the postal

inspector left the premises and law enforcement entered and secured the area pursuant to the terms of the search warrant.

{¶ 24} Smith testified that she was present during the search of Vanni's business and his home upstairs, and that the package had not been opened at the time of the search. Items obtained during the search included miscellaneous documents with Rhodes's phone number on them; receipts for money orders; cell phone records, which showed calls between Vanni's business and the city in Utah where Rhodes was living; UPS slips; carbon copies of 9 United States Postal Service ("USPS") express mail packages shipped from Vanni to Rhodes between August 24, 2006, and December 11, 2006; Vanni's handwritten note listing Rhodes's post office box; and a pharmacy bag containing a filled prescription for Vanni for 40 mg OxyContin pills. Smith testified that she learned during the course of the investigation that the USPS express mail packages contained payments from Vanni to Rhodes for pills, and that the dates of those package receipts corresponded to times shortly after Rhodes had sent packages to Vanni. Smith further testified that Vanni's prescription bottle of OxyContin contained fewer pills than it should have based on the date it was filled and the directions for use. She testified that Vanni admitted that he was addicted to OxyContin.

{¶ 25} Smith testified that she questioned Patricia Boesel, who told her that Vanni said that he did not want anything to be accepted from Rhodes in Utah. The agent testified that Rhodes's package was hand-delivered to Boesel but that she neither declined it nor requested that it be returned to sender in the one to two minutes before law enforcement entered the premises. In addition, she testified that Boesel's statement contradicted what agents in Utah reported to her after they monitored a phone call between Rhodes and Vanni prior to the delivery of the oxycodone on February 13, 2007.

{¶ 26} Finally, Smith testified regarding the bulk amount of the pills. She testified that she had consulted the controlled-substance table in the book Drug Laws of Ohio, Official Edition, to determine the bulk amount for 80 mg pills of OxyContin. She testified that the table was compiled by the Ohio State Board of Pharmacy for the purpose of aiding law-enforcement officials in determining whether a substance is a controlled substance and schedule drug, and in determining bulk amounts in accordance with R.C. 2925.01(D). Smith testified that she determined, according to this resource, that the bulk amount of oxycodone of the type received by Vanni on February 13, 2007, is six extended-release tablets. She testified, therefore, that 30 tablets would be five times the bulk amount, and that Vanni obtained 45 tablets in this shipment.

{¶ 27} Stephanie Laux, a drug analyst with the Bureau of Criminal Identification and Investigation ("BCI"), testified that she analyzed the 45 green tablets obtained by Vanni from Rhodes. She testified that the "OC" and "80" marking

on the tablets was consistent with 80 mg oxycodone tablets. She testified that the tablets tested positive for oxycodone and that she confirmed that result with a mass spectrometer. Laux testified that oxycodone is a Schedule II controlled substance and that the bulk amount according to the Ohio Drug Law Book is six tablets. Defense counsel presented Laux with a printout captioned "Clinical Pharmacology," which stated that no maximum dosage for oxycodone exists. Laux testified that she is not familiar with any such reference document and does not know it to be accurate.

{¶ 28} Michael Barnhardt, Director of the Medina County Drug Task Force, testified that he was involved in the search of Vanni's business and home on February 13, 2007. He testified that he had interviewed Vanni on the premises. Barnhardt testified that Vanni had admitted that he had received shipments of 30 to 90 pills of OxyContin from Rhodes for about a year. He testified that Vanni had explained that the number of pills he received varied based on how many pills Rhodes had left over from her own prescription, but that Vanni had not indicated that he had ever received fewer than 30 pills. Barnhardt testified that Vanni had told him that his last contact with Rhodes was a few days prior to the arrival of the February 13, 2007 shipment, and that he had received a prior shipment approximately 30 days earlier. Barnhardt testified that Vanni admitted to paying Rhodes for the OxyContin she sent him. He testified that Vanni further admitted that he was expecting to receive some OxyContin from Rhodes around the time of the February 13, 2007 shipment.

{¶ 29} Martin Cernelich, a United States postal inspector, testified that he had assisted the Medina County Drug Task Force in the controlled delivery of oxycodone to Vanni's business on February 13, 2007. He testified that he brought the package and other mail to the back office area to Pat Boesel, telling her that he was delivering the mail inside to save her a trip outside to the mailbox in inclement weather. Cernelich testified that the package was "not an accountable piece of mail"; therefore, no signature was required. He testified that Boesel did not refuse the package from Rhodes. Cernelich testified that he believed that Boesel began reviewing the mail as he left.

{¶ 30} Vanni argues that there was insufficient evidence to show that he knowingly possessed the oxycodone. The state's evidence indicated that Vanni had not handled the package, opened it, or otherwise exerted any control over the contents. However, the state need not prove knowing possession, so long as it can prove that Vanni knowingly obtained or used the controlled substance.

{¶ 31} This court concludes that the state presented sufficient evidence to allow any rational trier of fact to find beyond a reasonable doubt that Vanni knowingly obtained the oxycodone. The Central Utah Narcotics Task Force contacted the Medina County Drug Task Force regarding their investigation and suspicions

regarding shipments of oxycodone from Rhodes in Utah to Vanni in Ohio. The drug task force found evidence of on-going correspondence between Rhodes and Vanni. They found copies of express-mail receipts for mail sent from Vanni to Rhodes. Agent Smith testified that she learned that Vanni had used these packages to send payment to Rhodes for pills she sent to him. The director of the task force testified that Vanni admitted that Rhodes had been selling her excess oxycodone to him for about a year. The director testified that Vanni admitted last receiving oxycodone from Rhodes approximately 30 days before the delivery of 45 pills on February 13, 2007. The director further testified that Vanni admitted that he had had contact with Rhodes a few days before the arrival of the 45 pills at issue in this case and that he was expecting a shipment of OxyContin from her. The reasonable inference is that Vanni was coordinating the relevant shipment of oxycodone from Rhodes. The oxycodone was delivered to Vanni's business a few days later, on February 13, 2007. Vanni's employee, Patricia Boesel, did not refuse delivery of the package from Rhodes to Vanni. Based on the evidence presented at trial, this court concludes that there was sufficient evidence, when construed in a light most favorable to the prosecution, to convince an average person that Vanni knowingly obtained oxycodone, a controlled substance, from Rhodes.

{¶ 32} This court further concludes that the state presented sufficient evidence to allow any rational trier of fact to find beyond a reasonable doubt that the amount of oxycodone obtained was equal to or exceeded five times the bulk amount. Both Smith, of the drug task force, and Laux, of BCI, testified that they had consulted a reference compiled by the Ohio State Board of Pharmacy to determine that the bulk amount for oxycodone in the form obtained by Vanni is six tablets. Accordingly, 30 tablets equal five times the bulk amount. There were 45 tablets in the package. Laux was not familiar with the printout of another purported source presented during cross-examination by Vanni that indicated that there is no maximum dosage for oxycodone, implying that the controlled substance does not have a "daily dose in the usual range" pursuant to the definition of "bulk amount" in R.C. 2925.01(D)(1)(d). Laux could not testify as to the authenticity of Vanni's purported resource. Based on the evidence presented at trial, this court concludes that there was sufficient evidence, when construed in a light most favorable to the prosecution, to convince an average person that the amount of oxycodone in the package mailed to Vanni was in excess of five times the bulk amount.

{¶ 33} In light of the above discussion, Vanni's second and fifth assignments of error are overruled.

## ASSIGNMENT OF ERROR III

Vanni's conviction was against the manifest weight of the evidence.

## ASSIGNMENT OF ERROR IV

The trial court failed to strictly comply with R.C. 2945.05.

{¶ 34} This court's resolution of Vanni's first assignment of error renders these assignments of error moot. Accordingly, this court declines to address the third and fourth assignments of error. App.R. 12(A)(1)(c).

## III

{¶ 35} Vanni's first assignment of error is sustained. His second and fifth assignments of error are overruled. This court declines to address the third and fourth assignments of error. The judgment of the Medina County Court of Common Pleas is reversed and the cause remanded for further proceedings consistent with this decision.

Judgment reversed
and cause remanded.

WHITMORE and BELFANCE, JJ., concur.