[Cite as *State v. Sepeda*, 2020-Ohio-4167.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No. L-19-1125

      Appellee                              Trial Court No. CR0201901145

v.

 Rafael Sepeda                              **DECISION AND JUDGMENT**

      Appellant                             Decided:  August 21, 2020

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Drew E. Wood, Assistant Prosecuting Attorney, for appellee.

Michael H. Stahl, for appellant.

* * * * *

**ZMUDA, P.J.**

## I.  Introduction

{¶ 1} Appellant, Rafael Sepeda, appeals the judgment of the Lucas County Court of Common Pleas, sentencing him to three years in prison after a jury found him guilty of one count of felonious assault.  Because we find that the trial court abused its discretion in excluding other-acts evidence of the victim under Evid.R. 404(B), we reverse and remand this matter to the trial court for a new trial.

## A. Facts and Procedural Background

{¶ 2} On December 26, 2018, appellant was involved in a confrontation with A.E. at the corner of Logan Street and Broadway Street in Toledo, Ohio. At some point during the confrontation, A.E. was allegedly struck by appellant's Ford Explorer sport utility vehicle.

{¶ 3} As a result of the confrontation, appellant was indicted on January 25, 2019, and charged with one count of felonious assault in violation of R.C. 2903.11(A)(2), a felony of the second degree. Appellant entered a plea of not guilty to the aforementioned charge, and the matter proceeded through pretrial discovery and motion practice.

{¶ 4} On March 14, 2019, appellant filed a "notice of intent to use 'other acts' testimony pursuant to [Evid.]R. 404(B) and R.C. 2945.59," informing the court of his desire to introduce evidence of A.E.'s prior conduct in order to demonstrate that the incident giving rise to the state's indictment was preplanned by A.E. In particular, appellant wished to introduce evidence in the form of testimony from Kevin McMahon, who had previously reported a similar incident involving A.E. to law enforcement, as follows:

> Mr. McMahon told police that the alleged victim had stared down Mr.
> McMahon during a green light, which forced Mr. McMahon to stop. The
> alleged victim then started yelling and swearing at Mr. McMahon and
> kicked dents into Mr. McMahon's truck. He further stated that he believed

the alleged victim would have jumped on the top of his vehicle if Mr. McMahon had not driven away.

{¶ 5} In his notice, appellant asserted that he did not wish to introduce the foregoing evidence in order to show conformity with A.E.'s prior acts, but rather, in order to "show that the alleged victim had a motive and plan to accost the Defendant which is permitted by Evidence Rule 404(B)."

{¶ 6} Following a response in opposition from the state, the trial court held a hearing on appellant's notice on April 26, 2019. Two witnesses testified at the hearing. Appellant's wife, Kathy, was the first to testify. Kathy was present in appellant's vehicle when the December 26, 2018 confrontation between appellant and A.E. occurred.

{¶ 7} According to her testimony, Kathy and appellant were stopped at a stop sign on Logan Street and Broadway Street when A.E. walked in front of their vehicle, traveling from left to right along the crosswalk. Kathy noted that a deputy sheriff sticker and badge was displayed in the window of appellant's vehicle. Kathy explained that A.E. "kept turning his head and looking at us. * * * And when he got on my husband's side of the car, he spit whatever was in his mouth at the car. And then he went on across the street over to – over to this sidewalk." Kathy stated that A.E. kept looking back toward appellant as he continued down the sidewalk, "and then [A.E.] threw down his cup and turned and started running toward our vehicle."

{¶ 8} In response to A.E. charging at his vehicle, appellant attempted to flee the scene. Because the traffic on Broadway Street was heavy at the time, and since another

3.

vehicle was behind him, appellant was forced to pull his vehicle off the road and onto the grassy area of a nearby parcel. Kathy testified that A.E. approached appellant's side of the vehicle at this point, began to curse at appellant, and directed appellant to get out of the car.

{¶ 9} Kathy stated that A.E. hit the driver's side mirror and front door. In response, appellant told A.E. that he was a deputy sheriff, and instructed A.E. to step away from the vehicle. Rather than comply, A.E. allegedly paced back and forth in front of the vehicle, preventing appellant's escape from the scene. Kathy stated that A.E. continued by striking the hood of appellant's vehicle with his hand, jumped onto the hood, and "began punching the car and just punching it and punching and then he threw his body on the windshield and kept slamming, slamming his body on the windshield."

{¶ 10} Eventually, A.E. slid off of the hood, prompting appellant to turn the vehicle to the left and flee the scene. Kathy reported that A.E.'s actions physically damaged the hood and driver's side of the vehicle. Further, Kathy explained that the exhaust system detached from the underside of the vehicle when appellant drove over the curb as he was trying to escape.

{¶ 11} On cross-examination, Kathy confirmed that appellant had already attempted to escape and drove over the curb by the time A.E. approached the vehicle and hit it on the driver's side. She described the confrontation as happening "very, very quickly," approximately two to three minutes in total.

4.

{¶ 12} Appellant called McMahon as his second and final witness. McMahon testified that he was watching the local news on television when a news report of the December 26, 2018 incident was discussed. At the time, McMahon recognized A.E. as "a guy that kicked my car, threw himself against my car a few months earlier." After seeing the news report, McMahon contacted the Lucas County Sheriff's Department and informed officers of his prior interaction with A.E. in East Toledo.

{¶ 13} At the hearing, McMahon recounted the details of his encounter with A.E. According to McMahon, he was traveling at a speed of 40 m.p.h. when he noticed a man, later identified as A.E., begin to walk slowly across the road in his lane of travel. McMahon slowed down, and was eventually forced to stop because A.E. walk in front of his vehicle. A.E. stood in front of McMahon's vehicle, staring at McMahon, for a period of 90 seconds. A.E.'s actions during this time led McMahon to believe that A.E. wanted to jump onto his hood. However, a Buick emblem that protruded from the hood would have "tore [A.E.'s] stomach up" if he jumped on the hood. McMahon waved A.E. onward, in an effort to encourage A.E. to proceed to the other side of the road.

{¶ 14} Eventually, A.E. moved to the side of McMahon's vehicle. McMahon testified that he then "lurched forward, because I knew that either he was going to try and get in my car or it was my opportunity to move forward. As I moved forward, he came along this side and threw himself against my back quarter panel and with his knee – * * * [A.E.] caved in the whole side of my quarter panel." Afterwards, A.E. started cursing

5.

and screaming at McMahon, challenging him to a fight. McMahon described A.E. as "practically foaming at the mouth. I mean he went ballistic."

{¶ 15} On cross-examination, McMahon was asked why he came forward with the foregoing information in this case. McMahon explained that he was "so mad that this guy did this to me. * * * And I was just irritated because I didn't turn it in. I didn't call the police and I thought the guy was, my own opinion, doing an insurance scam. And it would have happened to me if I would have done anything wrong."

{¶ 16} At the conclusion of McMahon's testimony, the parties presented their arguments regarding the admissibility of the other acts evidence under Evid.R. 404(B). Appellant asserted that the evidence was admissible under the rule because it demonstrated A.E.'s plan or common scheme of accosting motorists, unprovoked, ostensibly so that he would subsequently be able to assert insurance claims against the motorists when he was injured. The state opposed appellant by contending that he failed to demonstrate a plan, particularly noting that McMahon merely speculated about whether A.E. was attempting an insurance scam when he confronted McMahon. Ultimately, the trial court took the matter under advisement.

{¶ 17} On May 1, 2019, the trial court issued its order on appellant's notice of intent to use Evid.R. 404(B) evidence at trial. In its order, the trial court found that McMahon's testimony was dissimilar from the facts of this case and thus inadmissible under Evid.R. 404(B). In particular, the court found:

6.

While there are similarities between the two encounters, they are separated by time and place. In Defendant's case, [A.E.] was several yards away from Defendant when something provoked him to return to Defendant's vehicle. In Mr. McMahon's case, Mr. Edwards did not hop on the Buick, and it is unclear what provoked him to kick the car as it was driving away. These and other details of the two incidents with [A.E.] demonstrate significant factual contrasts between what allegedly happened on December 26, 2018 in south Toledo and what allegedly happened in October or November of 2018 on Woodville Road in east Toledo. The evidence of alleged conforming character overshadows any potentially valid evidentiary value, such as motive, plan, scheme, and the like. The value of such evidence is substantially outweighed by the danger of both unfair prejudice and the danger that what would eventuate is a trial within a trial.

{¶ 18} Following the trial court's denial of appellant's request to admit McMahon's testimony, the parties completed their discovery and the matter proceeded to a jury trial. On June 6, 2019, the jury returned a guilty verdict to the charge of felonious assault. The matter proceeded immediately to sentencing, and appellant was ordered to serve three years in prison. Appellant's timely appeal followed.

7.

## B. Assignments of Error

{¶ 19} On appeal, appellant assigns the following errors for our review:

I. The trial court's ruling barring the introduction of independent testimony of similar bad acts of the complainant, specifically the complainant attacking another vehicle weeks before, was an error which denied former Deputy Sepeda his rights to present a defense and to a trial by jury under the Constitutions of Ohio and the United States.

II. The trial court erred, and Mr. Sepeda was denied his rights to present a defense and to confront the witnesses against him under the Constitutions of Ohio and the United States when the court sustained the prosecution's objection to defense counsel questioning the complainant.

III. Under the facts and circumstances of the case, the trial court's instruction to the jury that former Deputy Sepeda's retreat from the scene could be construed as indicia of guilt was in error and denied Sepeda his right to a fair trial and to present a defense under the Constitutions of Ohio and the United States.

IV. Former Deputy Sepeda was denied the right to a fair trial when the prosecution stated to the jury that it could not consider self-defense at all, and argued a legal proposition directly contrary to Ohio Law in effect at the time of trial and repeatedly made statements in closing which improperly shifted the burden of proof onto the defendant.

V. The prosecution failed to present sufficient evidence to prove every element of the crime charged.

VI. The jury lost its way and the conviction was contrary to the Manifest Weight of the Evidence.

## II. Analysis

### A. Admissibility of McMahon's Testimony Under Evid.R. 404(B)

{¶ 20} In his first assignment of error, appellant argues that the trial court's denial of his request to introduce evidence of A.E.'s confrontation of McMahon in October or November of 2018 deprived him of his rights to present a defense and to a trial by jury under the Constitutions of Ohio and the United States.

{¶ 21} We note at the outset that appellant's constitutional argument that his right to present a complete defense was infringed in this case rises and falls on whether the trial court erroneously prohibited him from introducing the proffered evidence under the applicable rules of evidence. Indeed, "a complete defense does not imply a right to offer evidence that is otherwise inadmissible under the standard rules of evidence." *U.S. v. Lucas*, 357 F.3d 599, 606 (6th Cir.2004), citing *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir.2003) (en banc) and *Taylor v. Illinois*, 484 U.S. 400, 410, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). Thus, as a threshold matter, we must consider the applicability of Evid.R. 404(B) to this case.

{¶ 22} In the typical scenario, Evid.R. 404(B) is applied in cases in which the state seeks to introduce evidence of a defendant's prior acts in order to establish the

9.

defendant's criminal conduct. However, this is not the ordinary case. Here, appellant

sought to introduce other acts evidence of a third party in order to exonerate himself.

This type of evidence has been referred to as "reverse 404(B)" evidence. *State v.*

*Gillispie*, 2012-Ohio-2942, 985 N.E.2d 145, ¶ 25 (2d Dist.), citing *State v. Clifford*, 121

P.3d 489 (Mont.2005).

{¶ 23} While reverse 404(B) evidence is rarely used, its use is not unprecedented.

In Ohio, only a few courts have examined the admissibility of such evidence. Most

notably, the Second District Court of Appeals in *Gillispie* considered the applicability of

Evid.R. 404(B) in casing involving a defendant's use of reverse 404(B) evidence. There,

the court looked to the way in which the United States Circuit Courts of Appeals have

addressed this issue under the Federal Rules of Evidence, which are similar to Ohio's

Rules of Evidence, and concluded that a majority of federal circuits permit reverse

404(B) evidence so long as its probative value is not substantially outweighed by

considerations contained in the federal counterpart to Evid.R. 403. *Id.* at ¶ 19, citing *U.S.*

*v. Stevens*, 935 F.2d 1380 (3d Cir.1991).[1] The court followed the approach of the

majority of federal circuit courts, and held that other acts evidence offered by a defendant

---

[1] In so holding, the court in *Gillispie* noted that some circuits, including the Sixth Circuit, have held that Evid.R. 404(B) does apply to reverse 404(B) evidence. *Id.*, citing *Wynne v. Renico*, 606 F.3d 867, 873 (6th Cir.2010) (Martin, J., concurring in the result based on precedent, but criticizing the Sixth Circuit Court of Appeals' former decision in *Lucas*, *supra*, as illogical and as having been wrongly decided).

10.

to support his defense should be evaluated using a balancing approach under Evid.R. 403, not Evid.R. 404(B).  *Id.* at ¶ 20.

{¶ 24} Because we agree with the analysis articulated by our sister court in its well-reasoned decision in *Gillispie*, we too hold that Evid.R. 403's balancing test is the applicable standard for ascertaining the admissibility of reverse 404(B) evidence.  Having reviewed the order denying appellant's request to admit reverse 404(B) evidence of A.E.'s prior confrontation with McMahon, it is clear that the trial court applied Evid.R. 404(B) in arriving at its decision.  In this respect, the trial court erred.  However, our analysis does not end here, because the trial court, in analyzing the applicability of the reverse 404(b) evidence, also engaged in a cursory Evid.R. 403(A) analysis, and found that the value of the evidence of A.E.'s prior confrontation with McMahon "is substantially outweighed by the danger of both unfair prejudice and the danger that what would eventuate is a trial within a trial."  Thus, we must examine whether the trial court abused its discretion in concluding that the evidence was inadmissible under Evid.R. 403(A).

{¶ 25} Evid.R. 403(A) provides:

(A) Exclusion Mandatory.  Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

{¶ 26} Trial courts are afforded broad discretion in balancing the probative value of evidence against the danger of unfair prejudice to the defendant under Evid.R. 403(A).

11.

*See State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, 854 N.E.2d 150, ¶ 171. Consequently, we review the trial court's Evid.R. 403(A) determination under an abuse of discretion standard. *Id.* An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 27} "In reaching a decision involving admissibility under Evid.R. 403(A), a trial court must engage in a balancing test to ascertain whether the probative value of the offered evidence outweighs its prejudicial effect." *State v. Wright*, 8th Dist. Cuyahoga No. 108026, 2019-Ohio-4460, ¶ 50, citing *State v. Maurer*, 15 Ohio St.3d 239, 473 N.E.2d 768 (1984), paragraph seven of the syllabus. In order for the evidence to be deemed inadmissible under Evid.R. 403, its "probative value must be minimal and the prejudice great." *State v. Morales*, 32 Ohio St.3d 252, 258, 513 N.E.2d 267 (1987). "When determining whether the relevance of evidence is outweighed by its prejudicial effects, the evidence is viewed in a light most favorable to the proponent, maximizing its probative value and minimizing any prejudicial effect to the party opposing admission." *State v. Lakes*, 2d Dist. Montgomery No. 21490, 2007-Ohio-325, ¶ 22.

{¶ 28} In examining the prejudice prong of Evid.R. 403, the Supreme Court of Ohio has observed that all relevant evidence is prejudicial, since "evidence that tends to disprove a party's rendition of the facts necessarily harms that party's case." *State v. Crotts*, 104 Ohio St.3d 432, 2004-Ohio-6550, 820 N.E.2d 302, ¶ 23. The court went on

12.

to emphasize that "only evidence that is *unfairly* prejudicial is excludable." (Emphasis sic.) *Id.*

{¶ 29} "Unfair prejudice does 'not mean the damage to a [party's] case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis.'" *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 89, quoting *United States v. Bonds*, 12 F.3d 540 (6th Cir.1993). "Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision." *Oberlin v. Akron Gen. Med. Ctr.*, 91 Ohio St.3d 169, 172, 743 N.E.2d 890 (2001), quoting Weissenberger's Ohio Evidence (2000) 85-87, Section 403.3. It is evidence that "'arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish'" and generally "'appeals to the jury's emotions rather than intellect.'" *Id.*

{¶ 30} Applying the foregoing principles to the case sub judice, we find that the probative value of A.E.'s prior confrontation with McMahon was not substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. In offering this evidence, appellant sought to establish A.E.'s pattern of aggressive behavior, first with an unprovoked attack on McMahon and second with an unprovoked attack on appellant. In both instances, A.E. allegedly approached a motorist and initiated a physical confrontation with no incitement from the motorist. The evidence of A.E.'s prior unprovoked confrontation with McMahon can be viewed as highly probative here as it lends credence to appellant's claim that it was A.E. who accosted

13.

him, not vice versa. Moreover, this evidence, if believed, may cast doubt upon A.E.'s credibility generally and the veracity of his testimony in this particular case.

{¶ 31} Furthermore, the evidence of A.E.'s prior confrontation with McMahon is not *unfairly* prejudicial to the state. Indeed, this evidence does not arouse sympathy, evoke horror, or appeal to the jury's instinct to punish. Rather, this evidence invites the factfinder to draw a logical conclusion, namely that because A.E. has engaged in strange and aggressive behavior under similar circumstances (i.e., an unprovoked encounter with an unknown motorist), he therefore may not be telling the truth when he accuses appellant of being the aggressor in this case.

{¶ 32} While the jury's potential disbelief of A.E. may prejudice the state's case, it does so by attacking the credibility of the accuser in this case, and is thus not unfairly prejudicial to the state. The jury is permitted to filter A.E.'s accusation that he was run over by appellant through the lens of A.E.'s prior confrontation with McMahon, as an aid to the jury's vetting of A.E.'s credibility. Indeed, the proper function of the jury requires the inclusion of such evidence as a predicate for the jury to carry out its role as factfinder. This is especially true where the evidence is being offered by a criminal defendant to support his defense, where an error in the jury's credibility determination could result in significant prison time for the defendant.

{¶ 33} In short, we find that the balancing analysis under Evid.R. 403(A) weighs in favor of admission of the evidence of A.E.'s prior confrontation with McMahon. Therefore, we find that the trial court abused its discretion in denying appellant's request

14.

to introduce the evidence. Moreover, in light of the conflicting testimony that was offered by the parties' witnesses at trial concerning whether appellant was provoked by A.E. prior to appellant's vehicle contacting A.E., we cannot say that the trial court's evidentiary error was harmless beyond a reasonable doubt.

{¶ 34} In light of the foregoing, we find appellant's first assignment of error well-taken. Our resolution of the first assignment of error in appellant's favor warrants a new trial, thereby rendering appellant's second, third, fourth, and sixth assignments of error moot.

## B. Sufficiency of the Evidence

{¶ 35} In appellant's fifth assignment of error, he argues that his conviction was not supported by sufficient evidence. "Because 'the state is not entitled to retry a criminal defendant after reversal for trial court error if the state failed in the first instance to present sufficient evidence * * * a defendant's assigned error that the conviction is based on insufficient evidence is not moot under these circumstances.'" *State v. Mathis*, 6th Dist. Lucas No. L-18-1192, 2020-Ohio-3068, ¶ 78, quoting *State v. Vanni*, 182 Ohio App.3d 505, 2009-Ohio-2295, 913 N.E.2d 985, ¶ 15 (9th Dist.).

{¶ 36} In reviewing a record for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

15.

{¶ 37} Here, appellant was convicted of felonious assault in violation of R.C. 2903.11(A)(2), which provides:

(A) No person shall knowingly do either of the following:

* * *

(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

{¶ 38} At trial, the state called eight witnesses, including A.E. and several eyewitnesses of the incident at issue in this case. Taken together, the testimony of the state's witnesses was sufficient to establish that appellant caused or attempted to cause physical harm to A.E. by running into him with a deadly weapon, namely a motor vehicle. *See* R.C. 2903.11(D)(3) (acknowledging that a motor vehicle qualifies as a deadly weapon).

{¶ 39} Collectively, the state's witnesses testified that appellant was stopped at the intersection of Logan and Broadway when A.E. entered the crosswalk. Because appellant's vehicle was obstructing the crosswalk at the time, A.E. was forced to walk into Broadway Street, a busy thoroughfare. A.E. was visibly upset as he walked around appellant's vehicle, spitting on the ground in the direction of appellant's vehicle.

{¶ 40} According to A.E., appellant rolled his window down and uttered a racial epithet as A.E. was proceeding through the crosswalk. A.E. turned around and threw his arms in the air. A.E. proceeded to throw an empty cup toward appellant's vehicle, but no contact with the vehicle was made. A.E. then turned around to continue on his way. At

16.

this point, appellant entered the intersection, made a U-turn, and maneuvered his vehicle toward A.E. at a speed of approximately 10 to 20 m.p.h., only briefly braking as he proceeded over a curb. Ultimately, appellant struck A.E. with his vehicle, forcing A.E. to jump onto the hood to avoid being run over, and injuring A.E. Each of the eyewitnesses to testify for the state indicated that appellant was not under any threat from A.E. at the time of the contact.

{¶ 41} After viewing the evidence introduced by the state in this case in a light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of felonious assault proven beyond a reasonable doubt. Accordingly, we find appellant's fifth assignment of error not well-taken.

### III. Conclusion

{¶ 42} In light of the foregoing, we find that substantial justice has not been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is reversed. Because the trial court abused its discretion in excluding evidence of A.E.'s prior confrontation with McMahon, this matter is remanded to the trial court for a new trial. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed
and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                        _____
                                                                    JUDGE

Christine E. Mayle, J.

                                                         _____
Gene A. Zmuda, P.J.                                JUDGE
CONCUR.

                                                         _____
                                                                    JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.