[Cite as *Loch v. Myers*, 2023-Ohio-2981.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY


Leonard M. Loch                                          Court of Appeals No.  L-22-1153

     Appellant                                          Trial Court No.  CI0201802761

v.

John S. Myers, et al.                                    **<u>DECISION AND JUDGMENT</u>**

     Appellees                                          Decided:  August 25, 2023

* * * * *

Thomas P. Timmers, for appellant.

Richard R. Malone, for appellees.

* * * * *

**DUHART, P.J.**

{¶ 1} Appellant, Leonard M. Loch, appeals from the judgment of the Lucas County Court of Common Pleas, following a jury trial, which awarded judgment in favor of appellees, John and Valerie Myers, on Loch's claim for breach of contract and wrongful eviction pertaining to an option to purchase the family farm on which he

resided. On appeal, Loch argues that the trial court erred in admitting evidence of his prior, failed attempts to purchase the family farm. Because the evidence was relevant to the issues at trial, and because the danger of unfair prejudice did not substantially outweigh the probative value of the evidence, the judgment of the Lucas County Court of Common Pleas is affirmed.

## Statement of the Facts and Case

{¶ 2} The property at issue in this case is an approximately 40-acre parcel of land located at 13332 Frankfort Rd. in Swanton, Ohio. The land is predominantly farm land, but it does contain a family residence and several outbuildings. For over 100 years the property was held by the Loch family, most recently by the Tannhauser Trust for which Leonard Loch was the trustee. In 2003, the property was foreclosed. Following a series of actions by Loch, which will be discussed in more detail below, the property was eventually sold in 2011 at a sheriff's sale to the mortgage holder, Sky Bank.

{¶ 3} Loch then solicited the help of his neighbors, John and Valerie Myers, to repurchase the property. The Myers borrowed money which they loaned to Loch's sister, Sharon Stoll. Stoll, using the funds from the Myers, purchased the property and then immediately conveyed it to the Myers. As part of the purchase agreement between Stoll and the Myers, Stoll had one year to exercise an option to repurchase the entire property for $200,000, or a portion of it for $5,140 per acre, which represented the same amount that was paid to purchase the property from Sky Bank. The purchase agreement required

2.

that the transaction contemplated by the option "shall be closed within forty-five (45) days from the date on which Seller exercises the option."

{¶ 4} On the last day before the option expired, Stoll sent written notice to the Myers that she wished to exercise the option. Stoll took no other steps to identify or conclude the purchase of any portion of the property. The closing deadline expired on January 27, 2013, without the transaction being completed.

{¶ 5} Several days later, on February 1, 2013, Loch and Stoll entered into a yearly lease agreement with the Myers. The lease agreement allowed Loch and his mother to continue residing at the family residence, where the mother had been living for the past 68 years. The lease required a nominal monthly rent of $10. In addition, the lease contained an option for Loch to purchase the "building site and up to 10 acres contiguous thereto, the exact dimensions to be determined by *Lessee and* Lessor, for the price of $5,140 per acre." Notably, "Lessee and" was handwritten in the margin of the lease agreement and was initialed by Loch, Stoll, and John Myers. Pursuant to the lease agreement, "Lessee shall exercise said option to purchase by notifying Lessor in writing before February 1, 2014 and closing within 45 days after said option is exercised."

{¶ 6} On January 31, 2014, Loch and Stoll sent a letter notifying the Myers of their intention to exercise the option and stating that they would be in contact to discuss the details. On March 16, 2014, one day before the deadline to close the transaction, the parties met at the Myers' house. At the meeting, Valerie Myers handwrote a proposal

3.

that included a rough sketch of the approximately five acres of property to be transferred. The proposal also stated that the Myers would pay the costs of the survey, purchase agreement, and legal fees, that Loch would be responsible for upgrading the well, and that the transaction was to be completed by August 2014. No one signed the handwritten proposal.

{¶ 7} The parties dispute what happened following this meeting, with each side arguing that the other party was responsible for drafting a purchase agreement and ordering a survey to specifically identify the property to be sold. In any event, no transaction ever occurred by August 2014. In September 2014, the Myers offered to give Loch the house and the 2.4 acres on which it was situated for free, but Loch declined because the offer did not also include a portion of land that was discussed at the March 16, 2014 meeting, which he said he would pay for, and which would have connected the Loch family home to Stoll's property just to the west.

{¶ 8} Thereafter, the parties maintained the status quo for the next several years. In 2017, the Myers decided to resolve the lease and possession issues relating to the property and the continued occupancy of the house by Loch and his mother. Discussions between Loch and the Myers ultimately resulted in the Myers delivering an eviction notice. In response, Loch initiated the present lawsuit on June 14, 2018, seeking specific performance for the Myers alleged breach of the option provision of the contract, thereby

4.

requiring the Myers to sell the property to Loch.  The Myers counterclaimed seeking an eviction.

{¶ 9} Eventually, the matter proceeded to a two-day jury trial in May 2022.[1]  The trial focused on four issues:

> 1. Did [Loch] in his attempt to exercise the option to purchase at issue adequately identif[y] that portion of the subject property which was proposed to be purchased under the terms of the option to purchase or other writings?
>
> 2. [If yes, did Loch] validly exercise[] an option to purchase the subject property?
>
> 3. [If yes, is Loch] entitled to specific performance of the option and conveyance of the real property identified * * * at a price of $5,140.00 per acre?
>
> 4. [If yes, did the Myers] act[] in bad faith in [Loch's] exercise of the option to purchase?

{¶ 10} In his opening statement, counsel for Loch framed the case as one "about greed.  It is about a wealthy neighbor who owns more than 700 acres of land taking advantage of a family they have lived next to for generations.  It is about the Myers coveting the Loch property and using subterfuge to keep them from it."  Counsel for the

---

[1] This case has been the subject of a prior appeal in *Loch v. Myers*, 2021-Ohio-2623, 176 N.E.3d 98 (6th Dist.).

Myers, on the other hand, highlighted Loch's numerous failed attempts to purchase the property. Counsel stated,

> [I]t's very unfortunate that we're here. Had there been adequate communication from Mr. Loch about what it was he wanted to buy and how he was going to pay for it, we wouldn't be here. But that didn't happen and that is consistent with the approach that he has taken since 2003 when the foreclosure was initiated and there were multiple incidents in which those proceedings were delayed and dragged out at the specific instance of his actions in filing bankruptcies and doing Sheriff's sales and avoiding Sheriff's sales.
>
> He had multiple, multiple opportunities to repurchase the property had he had the ability and the intent of doing so.

{¶ 11} During the course of the trial, Loch and Stoll testified that they were willing and able to purchase the 10 acres of property surrounding the homestead at the times that they invoked the options. However, the Myers refused to sell the property, claiming that the bank would not allow them to do so. Loch characterized the situation as Myers repeatedly stringing him along, but never having any real intention to sell the property. Consistent with this, Loch and Stoll elicited testimony from John Myers that he had obtained a mortgage over the property, had installed drainage tiles on part of the

property that Loch wanted to buy, and had applied to place the property under the protection of the Farmland Preservation Act.

{¶ 12} The Myers, on the other hand, sought to portray Loch as never having any real intention to purchase the property. In pursuit of this effort, the Myers sought testimony from Loch on cross-examination that after the property was foreclosed in 2003, it was scheduled to be sold at a sheriff's sale in February 2005. Prior to the sale, Loch filed for bankruptcy on behalf of the Tannhauser Trust, which stayed the foreclosure proceedings. When the bankruptcy proceedings concluded, the foreclosure proceedings were reactivated and a sheriff's sale was scheduled for the second time. Prior to that sale occurring, Loch filed for bankruptcy on behalf of the Tannhauser Trust again. In January 2006, the second bankruptcy proceedings were concluded and the foreclosure proceedings were reactivated and a sheriff's sale was scheduled for the third time. Loch appeared at the sale on behalf of Stoll, and was the successful bidder for the property. However, the sale was not completed because Loch was unable to obtain financing. The property was then scheduled for a sheriff's sale for the fourth time. This time, Loch appeared on behalf of a non-profit organization named Builders for Humanity that he formed and directed. Builders for Humanity was the successful bidder on the property, but the transaction never closed because the organization was unable to obtain financing. The property was then scheduled for a sheriff's sale for the fifth time, at which Loch appeared on behalf of an entity named People Smart Solutions, LLC, an Ohio limited

7.

liability company that he formed with his mother. People Smart Solutions was the winning bidder, but again the transaction did not close because People Smart Solutions was unable to produce the funds. Finally, in July 2011, the property was scheduled for a sheriff's sale for the sixth time, and this time the bank was the highest bidder. During the six years between the first attempt and the final successful sheriff's sale, Loch and his mother lived on the property for free and did not pay any property taxes, but still collected the land rents from the farm acreage.

{¶ 13} The Myers argued that this testimony reflected on Loch's credibility and was consistent with Loch's conduct relative to the exercise of the purchase options in that Loch used legal mechanisms to delay and extend the time that he could acquire the property, but never followed through with a purchase.

{¶ 14} Following the trial, the jury returned a verdict in favor of the Myers. The jury found in the first interrogatory that Loch, in his attempt to exercise the option to purchase, did not adequately identify "that portion of the subject property which was proposed to be purchased under the terms of the option to purchase or other writings." The trial court entered its judgment memorializing the jury verdict on June 7, 2022.

## Assignment of Error

{¶ 15} Loch has timely appealed the trial court's June 7, 2022 judgment entry and asserts one assignment of error for review:

8.

1. The Trial Court erred in admitting evidence regarding the Plaintiff's prior attempts to purchase the Property at issue when those prior actions did not in any way relate to the purchase from the Appellees and any probative value of the evidence was substantially outweighed by the danger of unfair prejudice.

**Analysis**

{¶ 16} In his assignment of error, Loch argues that the trial court erred in allowing the testimony because it was not relevant under Evid.R. 401. Alternatively, Loch argues that the testimony should have been excluded under Evid.R. 403(A) because its probative value was grossly outweighed by its prejudicial effect.

{¶ 17} "Decisions involving the admissibility of evidence are reviewed under an abuse-of-discretion standard of review." *Estate of Johnson v. Randall Smith, Inc.*, 135 Ohio St.3d 440, 2013-Ohio-1507, 989 N.E.2d 35, ¶ 22; *Gimex Properties Corp., Inc. v. Reed*, 2022-Ohio-4771, 205 N.E.3d 1, ¶ 49 (6th Dist.) ("The admission of evidence is within the discretion of the trial court and the court's decision will only be reversed upon a showing of abuse of that discretion."). An abuse of discretion connotes that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

9.

### The Testimony was Relevant

{¶ 18} Pursuant to Evid.R. 402, "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio.  Evidence which is not relevant is not admissible."  "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Evid.R. 401.

{¶ 19} Loch argues that evidence of his conduct during the foreclosure proceedings is not relevant because it is entirely unrelated to the subsequent transactions with the Myers.  We disagree.  Not only was Loch's conduct taken relative to the same property that is at dispute in this case, but one of the key issues was Loch's credibility and whether he properly exercised his option and identified the property that he wanted to purchase.  Loch framed the issue as one of greed; that he and Stoll were ready and willing to buy, but the Myers underhandedly thwarted their efforts.  The Myers, on the other hand, argued that Loch never realistically intended to complete the purchase, but was just seeking to delay and extend the amount of time that he could remain on the property.  In this context, Loch's conduct during the foreclosure proceedings, whereby he utilized legal machinations to extend the time that he was allowed to stay on the property, makes

10.

it less probable that he properly exercised the option and identified the property to be purchased and more probable that he was just seeking to delay. Therefore, the trial court did not abuse its discretion when it determined that Loch's testimony was relevant.

### The Probative Value of the Testimony was not Substantially Outweighed by the Danger of Unfair Prejudice

{¶ 20} Loch alternatively argues that even if the evidence was relevant, it still should have been excluded under Evid.R. 403(A), which provides, "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Loch contends that the miniscule probative value of the testimony was grossly outweighed by the prejudicial effect of making it appear that he was cheating the system and causing undue delay in the foreclosure process.

{¶ 21} "In reaching a decision involving admissibility under Evid.R. 403(A), a trial court must engage in a balancing test to ascertain whether the probative value of the offered evidence outweighs its prejudicial effect." *State v. Sepeda*, 2020-Ohio-4167, 157 N.E.3d 889, ¶ 27 (6th Dist.), quoting *State v. Wright*, 8th Dist. Cuyahoga No. 108026, 2019-Ohio-4460, ¶ 50. "In order for the evidence to be deemed inadmissible under Evid.R. 403, its 'probative value must be minimal and the prejudice great.'" *Id.*, quoting *State v. Morales*, 32 Ohio St.3d 252, 258, 513 N.E.2d 267 (1987). "When determining whether the relevance of evidence is outweighed by its prejudicial effects, the evidence is viewed in a light most favorable to the proponent, maximizing its probative value and

11.

minimizing any prejudicial effect to the party opposing admission." *Id.*, quoting *State v. Lakes*, 2d Dist. Montgomery No. 21490, 2007-Ohio-325, ¶ 20.

{¶ 22} It is axiomatic that all relevant evidence is prejudicial, since "evidence that tends to disprove a party's rendition of the facts necessarily harms that party's case." *State v. Crotts*, 104 Ohio St.3d 432, 2004-Ohio-6550, 820 N.E.2d 302, ¶ 23. The question under Evid.R. 403(A), however, is whether the prejudice is "unfair." "Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision. * * * [I]f the evidence arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish, the evidence may be unfairly prejudicial. Usually, although not always, unfairly prejudicial evidence appeals to the jury's emotions rather than intellect." *Id.* at ¶ 24, quoting *Oberlin v. Akron Gen. Med. Ctr.*, 91 Ohio St.3d 169, 172, 743 N.E.2d 890 (2001); *Sepeda* at ¶ 29.

{¶ 23} Here, the probative value of the testimony regarding Loch's conduct during the foreclosure proceedings was not substantially outweighed by the danger of unfair prejudice. As discussed above, the testimony was probative on the issue of Loch's credibility and whether he properly exercised his option and identified the property he wanted to purchase. Although the testimony arguably appeals to the jury's emotions, it also appeals to the jury's intellect in its assessment of Loch's credibility. From the testimony, the jury could rationally conclude that Loch has previously taken advantage of legal processes to delay his loss of the property, and thus it is likely that he was also

12.

taking advantage of legal processes to delay his loss of the property by exercising his option to purchase but not following through with the transaction. Thus, while the testimony was prejudicial to Loch, it was not unfairly prejudicial. Therefore, the trial court did not abuse its discretion when it allowed testimony of Loch's conduct during the foreclosure proceedings.

{¶ 24} Accordingly, Loch's assignment of error is not well-taken.

### Conclusion

{¶ 25} For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App.R. 24, Loch is hereby ordered to pay the costs incurred on appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Gene A. Zmuda, J.      _____
                JUDGE
Myron C. Duhart, P.J.

Charles E. Sulek, J.      _____
CONCUR.           JUDGE

               _____
                JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.